UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEROME CURRY,

                     Plaintiff,                  **DECISION**

     v.                                                  **and**

NURSE ADMIN. A. TOUSIGNANT,             **ORDER**
JOHN ALVES,
B. WOJNAREK,                                     **04-CV-649F**
K. DYAL,                                                (Consent)
SGT. LITWILER, and
J. AMES,

                     Defendants.
_____

APPEARANCES:           JEROME CURRY, *Pro Se*
                                98-A-6098
                                Great Meadow Correctional Facility
                                P.O. Box 51
                                Comstock, New York     12821

                                ANDREW M. CUOMO
                                New York State Attorney General
                                Attorney for the Defendants
                                KIM S. MURPHY
                                Assistant Attorney General, of Counsel
                                107 Delaware Avenue, Fourth Floor
                                Buffalo, New York     14202

In this prisoner civil rights action, Plaintiff claims Defendants were deliberately indifferent to his Eighth Amendment right to receive medical care and dental treatment. Specifically, Plaintiff alleges Defendant Tousignant ("Tousignant") delayed Plaintiff access to his prescribed orthopedic boots and dental care needs while Plaintiff was confined at the Upstate Correctional Facility ("Upstate"), and that Defendants Alves ("Dr. Alves" or "Alves"), Wojnarek ("Wojnarek"), Dyal ("Dyal"), Litwiler ("Litwiler"), and Ames ("Ames") ("Southport Defendants") delayed Plaintiff access to the boots for

approximately three months following Plaintiff's transfer to the Southport Correctional Facility ("Southport").

Defendants' motion for summary judgment was filed on January 30, 2006 (Doc. No. 40). In support, Defendants filed the declarations of Defendants Tousignant ("Tousignant Declaration"), Alves ("Alves Declaration"), and Litwiler ("Litwiler Declaration"), along with Exhibit A, 178 pages of documents constituting Plaintiff's medical records consecutively numbered Bates No. 000001, etc., ("Bates No(s). ____") and Exhibit B, a chronological history of Plaintiff's housing location while incarcerated in the New York State Department of Corrections ("Defendants' Exhibit B"). In opposition, Plaintiff filed his Statements [*sic*] of Undisputed Facts on April 24, 2006 (Doc. No. 50) ("Plaintiff's Statement"). Plaintiff also relies upon copies of his Requests for Interview or Information and Sick Call Requests, attached to Plaintiff's Motion for Leave to File an Amended Complaint as Exhibits 1, 2, and 3, filed June 27, 2005 (Doc. No. 23) ("Plaintiff's Exhibit(s) ___"). Plaintiff's Statement ¶ ¶ 8 (Upstate), 15 (Southport).

Defendants acknowledge the existence of such records, Alves Declaration ¶ 10; Tousignant Declaration ¶ 6; however, according to Defendants, because prisoner Sick Call Requests are "noted" in the particular prisoner's Ambulatory Health Record ("AHR"), which records only the medical staff's hand-written response to each Sick Call Request, the request slips themselves are not included in the respective prisoner's AHR. *Id.* Thus, although Defendants assert that Defendants' Exhibit A contains Plaintiff's "medical records" while incarcerated in the New York state prison system, Tousignant Declaration ¶ 3; Alves Declaration ¶ 2, to the extent that Plaintiff's AHRs do not include details of Plaintiff's hand-written asserted medical needs and requests as

they appear in his Sick Call Requests, the AHRs included in Defendants' Exhibit A do not fully represent Plaintiff's asserted medical complaints and requests for assistance or treatment while at Southport.[1]

As Defendants Tousignant and Alves acknowledge both they and other medical staff reviewed the Sick Call Requests attached to Plaintiff's Amended Complaint, Tousignant Declaration ¶ 6; Alves Declaration ¶ 12, the court will consider such requests to constitute business records and as competent evidence submitted by Plaintiff in opposition to Defendants' motion.  In reply to Plaintiff's opposition papers, Defendants filed the Reply Declaration of Kim S. Murphy, Assistant New York Attorney General, on April 26, 2006 (Doc. No. 51).  Based on its review of Defendants' motion and Plaintiff's opposition, Defendants' motion is GRANTED in part and DENIED in part.

## DISCUSSION

Plaintiff's claim against Tousignant is based on her alleged failure, while employed as Nurse Administrator at Upstate, during Plaintiff's residence at that facility, to provide Plaintiff with prescribed orthopedic boots Plaintiff alleges were needed to avoid pain in his right foot, caused by a gun-shot wound, and her failure to arrange for prompt treatment of a broken dental filling suffered by Plaintiff.  Plaintiff's first request for medical attention to his ankle pain and need for the orthopedic boots was presented to medical staff at Upstate on July 2, 2002.  Plaintiff's Exhibit 1.  According to

---

[1] In the absence of any explanation by Defendants as to how Upstate or Southport medical personnel respond to or record a prisoner's Request for Interview or Information, *see, e.g.*, Plaintiff's Exhibit 1, the court will presume that such request forms are treated by Defendants similarly to prisoner Sick Call Requests.

Tousignant, the Nurse Administrator to whom Plaintiff's request was addressed, her involvement with Plaintiff's claims, during the approximately three month period Plaintiff was housed at Upstate, was limited to a review of Plaintiff's grievances related to his complaints of delayed access to his orthopedic boots and his need for dental care. Tousignant Declaration ¶ ¶ 7, 12.  Plaintiff's claim against Defendant Alves ("Alves") is based on Alves's responsibilities as the director of health services at Southport, where Plaintiff was housed from March 29, 2004 until August 16, 2004, who on March 31, 2004, approved, Bates No. 89, Plaintiff's use of the orthopedic boots which had been confiscated from Plaintiff upon his arrival at Southport.  Alves Declaration ¶ 9.  Plaintiff was notified of the approval at that time. *Id.*, Bates No. 129.  Plaintiff alleges Alves failed to take steps to assure Plaintiff promptly received the boots.  Plaintiff's Statement ¶ 12.  Plaintiff's claim against Wojnarek, Nurse Administrator at Southport, is based on Wojnarek's failure to assure Plaintiff's prompt access to his boots, Amended Complaint ¶ 28; Plaintiff's claim against Dyal, a registered nurse at Southport who responded to several of Plaintiff's Sick Call Requests, is predicated on Dyal's failure to provide Plaintiff the orthopedic boots.  Plaintiff's Statement ¶ ¶ 13-15.  Plaintiff's claim against Litwiler and Ames are based on their alleged improper seizure of the boots when Plaintiff was transferred to Southport.  *Id.* ¶ 18.

   While the court does not condone the extended delay in Plaintiff being given his orthopedic boots and needed dental treatment, Plaintiff fails to submit evidence demonstrating Tousignant or Alves had any responsibility to provide access to the boots or assure the needed dental care beyond their respective supervisory duties nor does Plaintiff show that these Defendants established a policy resulting in such

deprivation. Plaintiff offers no evidence to refute that Tousignant had responsibility for providing him with dental care while at Upstate. Tousignant Declaration ¶ 7. As such, Plaintiff's claims against Tousignant and Alves must be dismissed as a matter of law. *See Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003) (prison's supervising physician could not be liable under § 1983 for alleged deliberate indifference by treating prison physicians to inmate's serious medical needs based upon delays in treatment where supervising physician never examined or diagnosed inmate's ailments, was not directly responsible for scheduling treatments or procedures or following up on continuing treatment, and absent any evidence supervising physician was aware of or instituted any unconstitutional policy, practice or act, or was grossly negligent in supervising subordinates that resulted in a lack of medical care).

According to the record, because prisoners are not allowed to wear boots at New York's state prisons, Plaintiff's boots were taken from him upon his arrival at Southport in late March 2004, and were not returned to him until about July 1, 2004. Alves Declaration ¶¶ 8, 16. Although Plaintiff alleges deliberate indifference against Litwiler and Ames, correction officers who handled the storage and retrieval of boots for inmates at Southport, Plaintiff offers no evidence to refute Litwiler's Declaration (Doc. No. 43) averring that any delay in processing the return of Plaintiff's orthopedic boots resulted from an unintentional administrative oversight not attributable to Litwiler or Ames. Litwiler Declaration ¶ ¶ 7, 8. Additionally, no evidence supports an inference that after seizing Plaintiff's boots, either Litwiler or Ames were themselves authorized to provide Plaintiff with his orthopedic boots upon arrival at Southport or that either of them prevented Plaintiff from obtaining the boots after Alves approved their use by

Plaintiff with knowledge that such deprivation would result in severe pain to Plaintiff.

Significantly, Plaintiff does not dispute Southport Defendants' assertions that prisoners are not permitted to have boots, without special authorization, and that in order for Plaintiff to retain his orthopedic boots, as being medically necessary while at Southport, Alves's approval was required. Tousignant Declaration ¶ 5; Alves Declaration ¶ 8. As such, Plaintiff fails to demonstrate the existence of a material issue of fact going to the requisite personal involvement and degree of *scienter, see Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994) (to be liable under Eighth Amendment, prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"), necessary to support a deliberate indifference claim as to Litwiler and Ames, based on their alleged confiscation and wrongful retention of Plaintiff's orthopedic boots. Plaintiff points to no evidence directly implicating Wojnarek, the nurse administrator at Southport, in Plaintiff's alleged violations regarding delayed access to his boots. As an administrator, Wojnarek has no liability absent evidence that Wojnarek treated Plaintiff and ignored Plaintiff's medical needs, or was responsible for a policy that resulted in harm to Plaintiff. *Hernandez, supra*.

Although Plaintiff was scheduled for treatment at Southport for his broken filling on October 28, 2004, he was transferred before that date from Southport to the Auburn Correctional Facility where the dental care was eventually provided. Plaintiff's Statement ¶ 10. Even if the delayed dental treatment could be attributed to Tousignant, Alves, Wojnarek or Dyal, an approximately four-month delay in providing dental care to an inmate is not an actionable Eighth Amendment violation. *See Harrison v. Barkley*,

219 F.3d 132, 138 (2d Cir. 2000) (noting that delay in treating prisoner's tooth decay problems of 5½ months did not constitute deliberate indifference) (citing cases). Accordingly, Plaintiff's claim for failing to provide dental care cannot proceed to trial. Summary judgment is therefore GRANTED as to Tousignant, Alves, Litwiler, Ames and Wojnarek with respect to Plaintiff's claims of delayed access to his orthopedic boots and dental care.

However, the court finds the record does reveal evidence from which a reasonable juror could determine that, after learning that Plaintiff was entitled to possess and use his orthopedic boots to mitigate pain in his ankle and foot, Dyal, a floor nurse at Southport, responsible for evaluating an inmate's Sick Call Requests by providing prescribed medication and health services to inmates in response to a Sick Call Request, Alves Declaration ¶¶ 10, 11, ignored Plaintiff's repeated complaints of severe pain by failing to provide Plaintiff with his prescribed boots.  Particularly, Dyal was made aware that after Alves had authorized Plaintiff's use of the boots on March 31, 2004, Plaintiff was not promptly provided with the boots despite also being aware that Plaintiff repeatedly complained of experiencing severe pain to Plaintiff's right ankle area during the time Plaintiff was without use of the boots.  Alves Declaration ¶¶ 13-16; Plaintiff's Statement ¶¶ 13-14.  Defendants' assertion that Plaintiff's need for the boots during this period was minimal because Plaintiff, as an SHU inmate, was permitted to be outside of his cell for only one-hour each day for recreation, Alves Declaration ¶ 7, overlooks the likelihood that Plaintiff would need to walk about his cell during the day or to his weekly shower.

Southport Defendants also point to Plaintiff's failure to voice specific complaints of severe pain and discomfort, because of being deprived of the boots while at Southport, as a basis for summary judgment. Alves Declaration at ¶ 17. However, a reasonable juror could infer that as the boots were deemed by Alves to be medically necessary, such a medical determination would not have been made unless the orthopedic boots were needed to permit Plaintiff to ambulate without experiencing a degree of pain sufficient to support a claim under the Eighth Amendment. Shortly after discovering that Plaintiff had been prescribed to wear the boots by other prison medical staff before Plaintiff's transfer to Southport, Alves issued a "medical necessity" authorization on March 31, 2004, allowing Plaintiff to be given the boots that had been confiscated from Plaintiff upon his arrival at Southport. Bates No. 89. This authorization was approved by the Southport Acting Superintendent for Security. Alves Declaration ¶ 9. Moreover, in opposing summary judgment, Plaintiff unequivocally represents that the delay in providing the boots resulted in his experiencing "severe pain and discomfort" caused by his prior ankle and foot "problems," and that Dyal was aware of such pain yet failed to obtain Plaintiff's boots for his use. Plaintiff's Statement ¶ 16.

After arriving at Southport, Plaintiff twice requested pain relief medication for right ankle pain, Plaintiff's Exhibit 2, on April 8 and April 15, 2004, and Plaintiff's first Sick Call Request for the orthopedic boots was submitted on April 18, 2004. Alves Declaration ¶ 13; Bates No. 34. On April 20, 2004, Dyal acknowledged Plaintiff's request, and Dr. Avles's authorization for the boots, and indicated on the AHR that she

8

would forward the AHR to Plaintiff and an unidentified floor sergeant to enable Plaintiff to obtain the boots. *Id.* However, despite Dyal's stated intention to secure the boots for Plaintiff, Plaintiff did not obtain the boots until about July 1, 2004, and Plaintiff submitted numerous Sick Call Requests following his April 18, 2004 request complaining about pain in his right foot and ankle. Plaintiff's Exhibit 3. These requests provide unambiguous indications that the pain level in Plaintiff's foot was, during the period Plaintiff remained without his boots, becoming increasingly severe. *Id.* (Plaintiff's Sick Call Request Slips for 4/19/2004, 4/23/2004, 4/26/2004, 5/2/2004, 5/8/2004, 5/9/2004, 5/13/2004, 5/14/2004, 5/17/2004, 5/19/2004, 5/25/2004, 5/28/2004, 5/29/2007, 5/31/2004, 6/2/2004, 6/7/2007, 6/21/2004, 6/24/2004, 6/25/2004, 7/1/2007, 7/3/2004, and 7/8/2004). In several of these Sick Call Requests, following the initial April 18, 2004 request and Dyal's acknowledgment on April 20, 2004 that Plaintiff was in pain and had requested his boots to alleviate the pain, Plaintiff specifically stated he was still in severe pain and yet had not received the orthopedic boots. Plaintiff's Exhibit 3 (4/19/2004, 5/8/2004, 5/9/2004, 5/28/2004, and 6/25/2004).

Particularly, in Plaintiff's May 2, 2004 Sick Call Request, Plaintiff requested "pain medication for severe pain and discomfort due to injury on my right ankle." Plaintiff's Exhibit 3. On May 3, 2004, Dyal responded to this request by prescribing Tylenol. Bates No. 30. Shortly after this complaint of pain in Plaintiff's right ankle, Dyal learned that Plaintiff continued to experience significant pain in his right ankle and that Plaintiff still had not received the boots. Specifically, in his Sick Call Request dated May 8, 2004, Plaintiff complained that he needed "pain medication for [his] right ankle pain"

and was having "a lot of pain and discomfort," and "need[ed] my Orthopedic Boots, as of this day I have not received them yet [*sic*]." Plaintiff's Exhibit 3 (Sick Call Request dated May 8, 2004). In reviewing this Sick Call Request, Dyal acknowledged that Plaintiff "wants to know where [his] boots are. Has boot permit. Will question him as to where boots are." Bates No. 33 (AHR dated May 9, 2004). At that time, Dyal's action was, according to the AHR, limited to prescribing Advil pills for Plaintiff's use. *Id.* The following day, May 10, 2004, Dyal gave further attention to Plaintiff's May 8, 2004 Sick Call Request in a follow-up AHR in which she noted that Plaintiff had informed her the orthopedic boots were located in Plaintiff's "property box." *Id.* (AHR dated May 10, 2004). This AHR indicates Dyal's response, at that time, to Plaintiff's renewed request for the boots was to advise Plaintiff to request Plaintiff's "floor officer" to obtain the boots for Plaintiff. *Id.* According to Plaintiff, Plaintiff informed Dyal, when she visited him in his cell on May 10, 2004, of the location of his boots, but Dyal "refused to get the boots out of the storage box." Plaintiff's Statement ¶ 14.

While the record contains Plaintiff's numerous complaints, as described, *supra*, thereafter about his continued pain and lack of the boots, which were noted by other Southport medical staff, there is no evidence that Dyal, despite her awareness of Plaintiff's pain and lack of his boots, took any further specific action to assure that Plaintiff received the medically necessary orthopedic boots as authorized by Dr. Alves. The evidence thus establishes that Dyal became aware on April 20, 2004 that Plaintiff was experiencing severe pain related to the fact that Plaintiff had been deprived of use of the boots for approximately three weeks, and was again made aware that Plaintiff's

medical problem with associated severe pain persisted until May 10, 2004 when, despite such knowledge of Plaintiff's pain and unexplained impediment to obtaining the boots, Dyal refused to take steps to assure Plaintiff received the prescribed boots.[2]

On this record, the court finds material issues of fact which, if resolved at trial in Plaintiff's favor, demonstrate that after learning on April 20, 2004 and May 10, 2004 that Plaintiff had experienced a significant delay in obtaining his prescribed orthopedic boots and had then not received the boots, Dyal was deliberately indifferent to Plaintiff's continued complaints of severe pain which Dyal was aware Plaintiff attributed to his lack of access to the authorized orthopedic boots. Defendants contend that Dyal is not responsible for any administrative lapses by the prison security personnel at Southport resulting in the failure to provide Plaintiff with the boots immediately following Dr. Alves's authorization. Defendants' Memorandum at 8. However, prison medical personnel with specific knowledge of a prisoner's serious medical needs involving a serious risk of injury or pain absent immediate medical attention may not avoid Eighth Amendment liability by undue reliance on non-medical personnel to assure a prisoner's medical needs are met. *See Mobley v. O'Gara,* 2006 WL 197185 *6 (E.D.N.Y. 2006) (physicians who ordered prison staff to request ambulance may be liable under Eighth Amendment for severe pain experienced by plaintiff occasioned by lengthy delay in arrival of ambulance); *Chavis v. Keinert*, 2005 WL 2452150 * 24 (N.D.N.Y. 2005) (absent evidence that prison medical staff defendants were responsible for plaintiff's

---

[2] The AHR represented by Bates No. 34, also includes an AHR entry by another nurse, dated April 18, 2004, who further notes Plaintiff's ankle pain and prescribes Motrin. The jury could reasonably infer that Dyal would have noted this assertion of pain prior to responding to Plaintiff on April 20, 2004.

11

special diet needs or that defendants were aware that such diet was delayed through failures of other prison staff, defendants not liable on plaintiff's Eighth Amendment claims). Any security issues related to providing the boots to Plaintiff were obviated by the fact that Dr. Alves's authorization was approved by the Southport Deputy Superintendent for Security. Bates No. 89.

Defendants stress, Defendants' Memorandum at 6, that Plaintiff's allegations of pain, even if true, cannot support a finding that the delay in access to the orthopedic boots resulted in "extreme pain," the degree of pain necessary to support a deliberate indifference claim. *See Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005). In evaluating these criteria, the jury will consider whether Plaintiff's medical condition was one that "'a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; <u>or the existence of chronic and substantial pain</u>.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (underlining added). Dr. Avles's opinion was that Plaintiff's ankle problem did not constitute "a serious injury," Alves Declaration ¶ 22, and the delay in providing the boots he had authorized did not result in Plaintiff "suffering serious pain." *Id*. ¶ 17. However, Dr. Alves's opinions are based solely on his review of Plaintiff's medical records which do not include the complete text of Plaintiff's relevant Sick Call Requests nor any contemporaneous physical examination of Plaintiff. Alves Declaration ¶¶ 10, 17. Whether a reasonable juror would find that Plaintiff in fact suffered "chronic and substantial pain," *Chance, supra*, at 702, given the specific and repetitive

complaints of pain as asserted by Plaintiff in his numerous Sick Call Requests, which Defendants do not dispute were filed by Plaintiff, will depend on the jury's evaluation of Plaintiff's credibility in the context of the documented history of Plaintiff's complaints of continued and increasing pain in his right ankle and leg after arriving at Southport. Significantly, Dyal's AHR responses to Plaintiff's complaints of ankle pain included a prescription for pain medicine, and Southport Defendants do not assert that Plaintiff was considered by Southport medical staff as a malingerer. Moreover, no affidavit from Dyal disputes her awareness that Plaintiff was experiencing severe pain caused by Plaintiff's lack of the boots or denying Plaintiff's statement that when visiting Plaintiff's cell she refused Plaintiff's request to obtain the boots from a nearby storage area.

Defendants' reliance on *Alston v. Howard*, 925 F.Supp. 1034 (S.D.N.Y. 1996), a case involving a prisoner's request for orthopedic sneakers, is misplaced. Unlike the instant case, the plaintiff in *Alston* was not deprived of special footwear by defendant physician, *Alston*, 925 F.Supp. at 1039, and no evidence supported a finding that plaintiff experienced severe pain based on such deprivation. Further, contrary to Defendants' contention, Defendants' Memorandum at 11-13, qualified immunity is not available as Plaintiff's right to treatment, in the face of evidence that Dyal was aware that the alleged deprivation in this case was likely to result in severe pain, was well-established at the time Plaintiff claims Dyal failed, with the requisite *scienter* and degree of personal involvement, to provide him the boots. Accordingly, summary judgment is DENIED as to Plaintiff's claim against Dyal.

## CONCLUSION

Based on the foregoing, Defendants' motion (Doc. No. 40) is GRANTED in part, and DENIED in part.  A hearing to schedule trial consistent with the foregoing is set for **October 24, 2007 at 11:00 a.m.**  It is requested that the Attorney General arrange for the correctional facility to provide the Plaintiff with access to a private telephone at that time and that the Assistant Attorney General assigned to this matter appear personally at my courtroom at the time of the scheduled conference call.  It is also requested that the Plaintiff be given permission to have his legal papers relative to this action available at the time of the conference call.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
    LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: September 26, 2007
       Buffalo, New York